UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYRELL WOODRUFF,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

    *Defendants.*

Civil Action No. 16-1884 (RDM)

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the United States' and the Federal Bureau of Prisons' motion to transfer this action to the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a). Dkt. 5. Plaintiff Tyrell Woodruff, who is proceeding pro se, is a former inmate at Gilmer Federal Correctional Institution, a Bureau of Prisons facility located in Glenville, West Virginia. Dkt. 1 at 1, 2. He alleges that another inmate stabbed him repeatedly with a homemade knife; that he "yelled for the correctional staff to intervene to stop the" attack; that "staff members were within earshot of [his] calls for" help; but that they "did not respond until approximately 20–25 minutes after the attack, and then only came into the area because they were conducting a routine yard closing." *Id.* at 2–3.

A district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The moving party bears the burden of establishing that transfer is proper." *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 39 (D.D.C. 2010). The government asserts, and Woodruff does not contest, that this case could have been brought in the Northern District of West Virginia because the events giving rise to the claim took place at FCI

Gilmer, which is located in that district. *See* Dkt. 5 at 5; *accord* 28 U.S.C. § 1402(b) ("Any civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.")  Venue is also proper in this district, however, because Woodruff resides in the District of Columbia.  *See id.*

Because venue is thus permissible both here and in the Northern District of West Virginia, the Court must conduct an "individualized, case-by-case consideration of convenience and fairness" to determine whether the case should be transferred.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).  To conduct that evaluation, the Court considers both the private and public interests that might be implicated by a transfer of the action.  The private interest factors that courts typically consider include (1) the plaintiff's usual right to elect the forum, (2) the defendant's preferred forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof.  *See Pueblo*, 731 F. Supp. 2d at 39.  The public interest factors include (1) the familiarity of the proposed transferee court with the governing law, (2) the congestion of the transferee court compared to that of the transferor court, and (3) the local interest in resolving local controversies.  *See id.*  In general, the plaintiff's choice of forum must be afforded "substantial deference," although that deference is mitigated where the plaintiff's choice of forum has "no meaningful ties to the controversy and no particular interest in the parties or subject matter."  *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12–13 (D.D.C. 2000).

As the government points out, several factors weigh in favor of a transfer.  With respect to the "private factors," the government stresses that the actions giving rise to Woodruff's claims took place in West Virginia, most of the witnesses work or reside in West Virginia, and much of

the relevant evidence is likely to be found in West Virginia. *See* Dkt. 5 at 6–8. And, with respect to the "public factors," it adds that the Northern District of West Virginia has a "local interest in resolving this local controversy at home," *id.* at 8, that the Northern District of West Virginia has greater "familiarity with the relevant law," *id.* at 9, and that the Northern District of West Virginia is less congested than this court, *id.* at 8–9. Although the location of the alleged assault, witnesses, and other evidence all weigh in favor of transfer, the government overstates the significance of the "public factors." Most notably, the government misstates the relative congestion of the two possible fora; while it is true that fewer filings were made last year in the Norther District of West Virginia than in this Court, the average number of cases *per judge* is lower in this Court than in the Northern District of West Virginia. *Compare* Administrative Office, United States Court, *U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2016), at 27 (309 pending cases per judge in the Northern District of West Virginia) *with id.* at 2 (251 pending cases per judge in this court).[1] Federal district courts, moreover, "are presumed equally able to address" questions of federal law. *Pueblo*, 731 F. Supp. 2d at 40. To be sure, the applicable tort law in a Federal Tort Claims Act case is that of the state in which the act or omission occurred, *see Richards v. United States*, 369 U.S. 1, 11 (1962), but the government, quite sensibly, does not contend that this case will not raise questions of federal law, *see, e.g.*, 18 U.S.C. § 4042(a) (setting out the "standard of care owed by the Bureau of Prisons in negligence actions." *Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996)); 28 U.S.C. § 2680(a) ("discretionary function" exception to FTCA liability); 28 U.S.C. § 2675 (FTCA exhaustion requirement). And, finally, although this case may well be of

---

[1] http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1 (last visited Jan. 3, 2017)

local interest in the Northern District of West Virginia, the operative defendant is the Federal Bureau of Prisons, which presumably has an interest in the case and is located in this district.

Even putting these "public factors" to the side, other "private factors" weigh heavily in favor of keeping this action in this district.  First, Woodruff's choice of forum is entitled to substantial weight, and the Court is not persuaded that this district lacks "meaningful ties" to the controversy, or that it has "no particular interest in the parties or subject matter." *The Wilderness Soc'y*, 104 F. Supp. 2d at 12 (quotation marks omitted).  As noted above, the operative defendant, the Bureau of Prisons, is based in this district.  Moreover, although the alleged assault occurred in West Virginia, Woodruff alleges that the "[s]ecurity [at the correctional institution] was insufficient and well below the standard of care owed to Woodruff at the institution." Dkt 8 at 2 (Woodruff Opp. to Mot. to Transfer) (quoting Dkt. 1 at 3 (Complaint)).  The government posits that it is "clear that Plaintiff's claims are not related to any actions or decisions of BOP Central Office staff," Dkt. 9 at 3, but at this stage in the case, and particularly given the solicitude with which the Court must read Woodruff's pro se pleadings, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court cannot conclude that Woodruff's allegations of insufficient security at a Bureau of Prisons facility lacks any factual nexus to this forum.

More importantly, Woodruff has submitted a declaration in opposition to the government's motion, in which he explains that he is unemployed; that he resides with his 72-year-old grandmother, who relies on him for help with medical appointment and medication, grocery shopping, cleaning, and laundry; that he is under supervised release, one condition of which requires him to seek special permission to travel more than 100 miles outside the District of Columbia; and that he could not afford to travel outside the District of Columbia if this case were transferred.  Dkt. 8 at 5–6.

The government understates these concerns, conceding only that "the Northern District of West Virginia may be somewhat more burdensome for the Plaintiff." Dkt. 9 at 4.  In fact, if the case requires a trial or if Woodruff were required to travel to West Virginia for his deposition, he would face potentially insurmountable obstacles in attempting to litigate in the Northern District of West Virginia.  The same cannot be said of the federal government litigating in the District of Columbia.  Although the government may face inconvenience in collecting evidence from West Virginia to present in the District of Columbia, and the potential witnesses may likewise face inconvenience in testifying outside their home district, those hurdles pale in comparison to the difficulties that transfer would pose for Woodruff.  Although the government notes that it might be unable to compel the attendance of "any potential witnesses who are not agency employees," Dkt. 5 at 7, it fails to identify any such witness who it might seek to call at trial.

Accordingly, weighing the relevant factors together, the Court concludes that a transfer would not serve the interests of justice or the overall convenience of the parties.

The government also moved for an extension of time to answer or otherwise respond to the complaint for thirty days pending resolution of the transfer motion.  Dkt. 5 at 10.  The Court granted that motion in part, extending the deadline for the government to answer or respond pending receipt of Woodruff's opposition to the motion to transfer.  Dkt. 7 at 1–2.  The government filed its transfer and extension motion on November 23, 2016, and Woodruff filed his opposition on December 6, 2016, thirteen days after the government filed its motion.  *See* Dkt. 8.  Woodruff indicated in his opposition that he "would not oppose a reasonable extension of time" for the government to answer or respond.  Dkt. 8 at 4.  Accordingly, the Court will allow the government to answer or otherwise respond to the complaint on or before January 20, 2017.

## CONCLUSION

Defendant's motion to transfer is hereby **DENIED**, and its motion for an extension of time is hereby **GRANTED**.

**SO ORDERED**.

                                                  /s/ Randolph D. Moss
                                                  RANDOLPH D. MOSS
                                                  United States District Judge

Date: January 3, 2017