# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRELL WOODRUFF, *Plaintiff*, v. UNITED STATES OF AMERICA, *et al.*, *Defendants.* | Civil Action No. 16-1884 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrell Woodruff, proceeding *pro se*, brings this negligence action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1). Woodruff alleges that while he was incarcerated, another inmate assaulted him in the recreation yard with a knife. Seeking to recover damages for his injuries, he argues that the prison lacked adequate security measures to prevent such attacks and that the correctional officers failed to intervene once the incident was underway. The United States has moved to dismiss for lack of jurisdiction on the grounds that the challenged acts or omissions fall within the discretionary function exception to the FTCA's waiver of sovereign immunity. For the reasons that follow, the Court will **DENY** the motion as premature and will allow Woodruff to conduct limited jurisdictional discovery.

## I. BACKGROUND

The complaint, Dkt. 1, sets forth the relevant facts. Tyrell Woodruff is a former inmate at the Gilmer Federal Correctional Institution ("FCI Gilmer"), a Bureau of Prisons facility located in Glenville, West Virginia. Dkt. 1 at 1 (Compl. ¶ 2). On January 13, 2015, another inmate attacked Woodruff for no apparent reason in the inmate recreation yard. *Id.* at 2 (Compl. ¶ 4).

The assailant repeatedly stabbed Woodruff using "a home-made knife." *Id.* (Compl. ¶ 4). Woodruff "yelled for the correctional staff to intervene," but officers did not enter the area for another twenty minutes, when they were scheduled to close the yard. *Id.* (Compl. ¶ 4). Woodruff sustained at least five "puncture wounds and abrasions to his head" and "lost a considerable amount of blood." *Id.* (Compl. ¶ 5). He was placed in the segregation unit following the attack. *Id.* (Compl. ¶ 7). Woodruff submitted a personal injury claim to the Bureau of Prisons in September 2015 but did not receive a response. *Id.* (Compl. ¶ 13); *see id.* at 5–7.

Woodruff asserts a single claim for negligence against the United States.[1] He alleges, first, that the correctional officers "did not make any attempt to intervene and stop the attack, even though staff members were within earshot of [his] calls for assistance." *Id.* at 3 (Compl. ¶ 10). Second, he alleges that "[s]ecurity was insufficient and well below the standard of care owed to [him]," which allowed "inmates . . . to enter the recreation[] yard at will armed with weapons." *Id.* (Compl. ¶ 11). These failures, Woodruff asserts, proximately caused his injuries, and he therefore seeks to recover $500,000 in damages for pain and suffering. *Id.* at 2–3 (Compl. ¶¶ 9, 14).

The United States has moved to dismiss for lack of subject matter jurisdiction. Dkt. 13. According to the government, the alleged negligent omissions that Woodruff has identified fall within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Id.* at 12–16. Woodruff opposes the motion and seeks limited jurisdictional discovery. Dkt. 15.

---

[1] Although Woodruff's complaint also refers to the Federal Bureau of Prisons in the caption, Dkt. 1 at 1, he has clarified that he intends to sue only the United States, Dkt. 15 at 2. The Court will, accordingly, dismiss the Bureau of Prisons as a defendant.

## II. LEGAL STANDARD

To resolve a motion to dismiss for lack of jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1), the Court may consider the complaint standing alone or in tandem with any "undisputed facts evidenced in the record," and may also resolve any factual disputes necessary to determine its jurisdiction. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The burden of establishing jurisdiction rests on the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## III. ANALYSIS

Sovereign immunity is "jurisdictional in nature" and, "[a]bsent a waiver, . . . shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "[T]he terms of [the United States's] consent to be sued . . . define [a] court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The FTCA waives the immunity of the United States for damages claims "arising from certain torts committed by federal employees in the scope of their employment." *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001); *see* 28 U.S.C. § 1346(b)(1). This waiver, however, is subject to several exceptions. *See* 28 U.S.C. § 2680. The exception at issue here—the discretionary function exception—applies to "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . , whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has set forth a two-part test for determining whether the discretionary function exception applies. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). First,

the Court must decide whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If so, the discretionary function exception will not shield the United States from suit because "the employee has no rightful option but to adhere to the directive." *Id.* If, however, "the challenged conduct involves an element of judgment," the Court must then determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* The exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537. Because "[d]iscretionary function determinations are jurisdictional in nature," *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995), the Court must dismiss any claims that fall within the scope of the exception.

The central dispute between the parties concerns the first part of the inquiry and, specifically, whether Bureau of Prisons or FCI Gilmer regulations or policies impose mandatory duties on correctional officers to prevent or stop physical attacks, like the one alleged here. In prisoner safety cases, "courts have examined . . . program statements, institutional supplements, manuals, and post orders to determine whether [the] government agents" were subject to mandatory duties. *Sledge v. United States*, 723 F. Supp. 2d 87, 93 (D.D.C. 2010).

The United States argues that there are "no specific statutes, regulations, or procedures that require FCI Gilmer employees to follow a specific course of action when protecting and supervising inmates." Dkt. 13 at 13. In support of this assertion, the government points to the declaration of Thomas Heath, a Recreation Specialist at FCI Gilmer. Dkt. 13-2 (Heath Decl.). According to Heath, "[t]here are no general or specific post orders for Recreation staff." Dkt. 13-2 at 2 (Heath Decl. ¶ 5). Heath also avers that "[i]n [his] training and experience, [he is] not aware of any mandatory directives regarding staff action in response to an ongoing altercation."

4

*Id.* (Heath Decl. ¶ 5). Turning to the second step, the United States contends that decisions on how to respond to inmate altercations and how to prevent inmates from bringing weapons into the recreation yard are "grounded in policy and implicate various factors, including resource allocation and adequacy of staffing." Dkt. 13 at 15. Thus, according to the United States, the discretionary function exception bars Woodruff's claim. *Id.* at 16.

Woodruff asserts that mandatory duties can be found in FCI Gilmer post orders and Bureau of Prisons program statements, but that he cannot obtain these documents without discovery.[2] Dkt. 15 at 9 (Woodruff Decl. ¶ 6). According to Woodruff, FCI Gilmer issues post orders "govern[ing] the conduct of corrections officers while they serve at a particular post within the institution." *Id.* at 4–5. He also cites Bureau of Prisons Program Statement PS5370.11, which provides among other things that "Recreation Programs must be supervised by a qualified person;" that the Recreation Supervisor "must . . . [d]evelop and post a monthly activity schedule;" and that "recreation staff will ensure that written rules of conduct exist for leisure programs." *Id.* at 5–6. Woodruff seeks to obtain the following documents through jurisdictional discovery: "the post orders in effect at FCI Gilmer on January 13, 2015," as well as five specific Bureau of Prisons program statements. *Id.* at 8 (Woodruff Decl. ¶ 2). His opposition does not address the government's argument on the second part of the discretionary function inquiry.

The United States responds that "discovery is not warranted given [the] considerable legal authority establishing that prison officials are afforded discretion in fulfilling the[ir]

---

[2] Woodruff also cites several authorities—a federal statute, a federal regulation, and the FCI Gilmer Inmate Handbook—that, he suggests, impose mandatory duties on correctional officers. Dkt. 15 at 2–4. But these sources do not set forth any relevant obligations on correctional staff.

statutory mandate" to protect inmates. Dkt. 16 at 3. "[T]o the extent the Court is inclined to grant limited jurisdictional discovery," however, the government argues that any discovery should be limited to the specific items identified in Woodruff's declaration and "limited further to the specific allegations . . . concern[ing] . . . the Recreation Yard." *Id.* (emphasis omitted).

Before a court rules on a motion to dismiss for lack of jurisdiction, the plaintiff must "be given an opportunity for discovery of facts necessary to establish jurisdiction." *Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001). When the United States asserts the discretionary function exception, an agency's internal guidelines may qualify as "facts necessary to establish jurisdiction" because they "can be an actionable source of a mandatory obligation." *Id.* Accordingly, a plaintiff is entitled to limited jurisdictional discovery if she can establish that she needs the internal guidelines to show that the discretionary function exception does not bar her claim. *Id.*; *see Loughlin v. United States*, 393 F.3d 155, 167 (D.C. Cir. 2004).

Woodruff has identified specific FCI Gilmer and Bureau of Prisons documents that may speak to the narrow question presented here: whether correctional officers at FCI Gilmer were required by regulation or policy to end the attack on Woodruff or to take particular safety measures to secure the yard. If he is correct that these sources create such mandatory duties, his claim may well fall outside the ambit of the discretionary function exception. The cases offered by the United States on the discretion generally afforded to prison officials, *see* Dkt. 13 at 13, do not address whether any specific rules that were in force at FCI Gilmer circumscribed that discretion.

Because Woodruff must "be given an opportunity" to discover whether, if they exist, the documents impose mandatory duties on correctional staff, the Court will deny the government's motion to dismiss as premature. In addition, the Court will allow Woodruff to conduct limited

6

jurisdictional discovery relating to (1) the Bureau of Prisons program statements specified in his declaration, *see* Dkt. 15 at 8 (Woodruff Decl. ¶ 2); and (2) the post orders in effect at FCI Gilmer on January 13, 2015. If appropriate, the United States may raise any objections to Woodruff's specific requests and may seek a protective order.

Woodruff also requests discovery for other categories of information, such as "disciplinary reports," "duty roster[s]," and documentation on security upgrades. *See* Dkt. 15 at 8–9 (Woodruff Decl. ¶¶ 4–7). That information, however, is not relevant to the application of the discretionary function exception. Discovery on these topics would therefore be premature.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that the government's motion to dismiss, Dkt. 13, is **DENIED** as premature; and it is further

**ORDERED** that Woodruff may engage in jurisdictional discovery subject to the limitations set forth in this opinion; and it is further

**ORDERED** that discovery shall be completed by December 1, 2017; and it is further

**ORDERED** that the parties shall submit a joint status report on or before January 5, 2018; and it is further

**ORDERED** that the Federal Bureau of Prisons is **DISMISSED** as a defendant in this action.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 26, 2017