UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYRELL WOODRUFF,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA,

    *Defendant.*

Civil Action No. 16-1884 (RDM)

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Tyrell Woodruff's motion requesting leave to file a Third Amended Complaint. Dkt. 72. Woodruff, a former inmate at the Gilmer Federal Correctional Institution ("FCI Gilmer"), brought this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, seeking to recover damages for injuries he sustained when another inmate attacked him with a knife in the prison's recreation yard. Dkt. 52. Woodruff alleges in his Second Amended Complaint that officials at FCI Gilmer were negligent in failing to prevent the assailant from carrying the knife, failing to intervene in the attack, and failing to promptly treat Woodruff's wounds. *Id.* at 3–4 (2d Amd. Compl. ¶¶ 9, 11, 14–16). In a prior opinion, the Court dismissed some of Woodruff's claims without prejudice. *Woodruff v. United States*, No. 16-cv-1884, 2020 WL 3297233, at *11 (D.D.C. June 18, 2020). Woodruff's pending motion seeks to cure deficiencies that the Court's decision identified in his Second Amended Complaint. Dkt. 72 at 5. The government opposes the motion to amend on several grounds, including that the proposed amendments would delay the case, would prejudice the government, and would be futile. Dkt. 73.

For the reasons that follow, the Court will **GRANT** Woodruff's motion to amend.

## I. BACKGROUND

Woodruff alleges that as he entered the recreation yard at FCI Gilmer on January 13, 2015, he "noticed that there were no correctional officers at the turnstile entrance to the yard." Dkt. 52 at 2 (2d Amd. Compl. ¶ 8). As Woodruff walked through the recreation yard, another inmate, whom Woodruff did not know, attacked him with a homemade knife. *Id.* at 3 (2d Amd. Compl. ¶ 9). Wooduff sustained "a wound on [his] scalp that required about twelve sutures to close," plus "four or five additional puncture wounds, as well as abrasions on his head." *Id.* (2d Amd. Compl. ¶¶ 9, 12). He "lost a substantial amount of blood and believes that he went into shock." *Id.* (2d Amd. Compl. ¶ 12).

Although his complaint contains only a single count, Woodruff alleges that FCI Gilmer's staff was negligent in at least three ways related to the attack. First, correctional officers failed "to operate the turnstile at the entrance of the recreation yard" and thus "allowed prisoners, including the assailant, to freely bring weapons onto the yard." *Id.* at 4 (2d Amd. Compl. ¶ 16). Second, officers assigned to supervise the recreation yard "paid no apparent attention to the long-lasting and potentially deadly attack on [Woodruff], despite being in a position to see and hear that attack." *Id.* (2d Amd. Compl. ¶ 15). Finally, Woodruff alleges that "[i]t took about 20–25 minutes for correctional officers to respond to [Woodruff] following the attack," and that officers eventually responded and attended to his wounds only in the usual course of closing the yard at 4 p.m. *Id.* (2d Amd. Compl. ¶ 14). According to Woodruff, these failures proximately caused his injuries, and he seeks $500,000 in damages. *Id.* at 6 (Prayer for Relief).

Although the factual allegations are easily explained, the procedural history of this long-running case is more complicated. Initially proceeding *pro se*, Woodruff filed suit against the United States on September 20, 2016, alleging a single count of negligence under the FTCA.

2

Dkt. 1.  Substantial motions practice followed.  The United States first moved to transfer the case to the Northern District of West Virginia, Dkt. 5, which the Court denied, *Woodruff v. United States*, No. 16-cv-1884, 2017 WL 44318 (D.D.C. Jan. 3, 2017) ("*Woodruff I*").  The United States then moved to dismiss for lack of jurisdiction on the ground that the challenged omissions fell within the discretionary function exception to the FTCA's waiver of sovereign immunity.  Dkt. 13.  The Court rejected that motion as premature and granted Woodruff an opportunity to conduct jurisdictional discovery.  *Woodruff v. United States*, No. 16-cv-1884, 2017 WL 4286190 (D.D.C. Sept. 26, 2017) ("*Woodruff II*").

On February 12, 2018, Woodruff filed his first motion to amend, Dkt. 23, along with a motion requesting the appointment of counsel, Dkt. 22.  Woodruff sought to amend his complaint to add claims against three to five unnamed correctional officers under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  The Court denied that motion, holding that the proposed amendment would be futile, on the ground that the Court lacked personal jurisdiction over the individual correctional officers.  *Woodruff v. United States*, 310 F. Supp. 3d 54 (D.D.C. 2018) ("*Woodruff III*").  Thereafter, the Court appointed counsel for Woodruff, *see* Minute Order (May 16, 2018), and Woodruff's new counsel subsequently sought leave to amend his complaint twice more.  Woodruff's second motion to amend sought leave to elaborate on the complaint's factual allegations, without adding any new claims for relief.  Dkt. 38; Dkt. 38-3.  The Court granted the motion over the government's opposition.  *See* Minute Entry (Feb. 28, 2019).  Woodruff's third motion to amend, which the government did not oppose, sought to make several technical corrections to the First Amended Complaint, Dkt. 49; Dkt. 49-3, and the Court granted that motion as well, Minute Order (May 3, 2019).  That produced the currently operative Second Amended Complaint.  Dkt. 52.

The United States once again moved to dismiss, asserting the discretionary function exception to the FTCA. Dkt. 53. That exception preserves the government's sovereign immunity against "[a]ny claim based upon an act or omission of an employee of the [g]overnment . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In a lengthy opinion, the Court granted in part and denied in part the motion to dismiss. *Woodruff v. United States*, No. 16-cv-1884, 2020 WL 3297233 (D.D.C. June 18, 2020) ("*Woodruff IV*"). The Court reached different conclusions as to each of the three allegedly negligent omissions of the FCI Gilmer staff. With respect to Woodruff's allegations about the understaffing of the turnstile, the Court held that, at least at the motion to dismiss stage, Woodruff adequately alleged that the staff had a non-discretionary duty to screen inmates entering the recreation yard, such that the discretionary function exception did not necessarily apply. *Id.* at *5. The Court, accordingly, denied the motion to dismiss as to that claim. *Id.*

With respect to Woodruff's claims related to the failure to intervene in the attack and failure to provide prompt medical aid, however, the Court first concluded that the prison officers had not violated any non-discretionary duty, based in part on the Court's review of prison guidelines known as "post orders." *Id.* at *3–4. The Court noted that the post orders did create a non-discretionary duty to report unusual activity, but Woodruff's complaint was "silent on the matter" of whether the officers violated a duty "immediately to report the assault." *Id.* at *4. Having determined that prison regulations did not impose a non-discretionary duty to intervene in the attack or to provide faster medical assistance, the Court turned to an analysis of the Eighth Amendment. If Woodruff had plausibly alleged an Eighth Amendment violation, then the

4

discretionary function exception would not apply, because "no government official enjoys discretion to violate the Constitution." *Id.* at *7. The Court held that Woodruff had plausibly alleged an Eighth Amendment violation as to the failure to intervene and therefore denied the motion to dismiss as to that argument. *Id.* at *8–9.

But the Court reached the opposite result as to the failure to provide faster medical treatment. *Id.* at *9. The Court found the medical treatment claim lacking because of several gaps in Woodruff's pleading:

> Woodruff's complaint does not allege facts sufficient to conclude that the officers who were present had the required "subjective knowledge of [Woodruff's] serious medical need[.]" [*Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).] . . . He does, to be sure, allege that the officers were "close enough to . . . have heard [him] shouting and [to] see [him] being assaulted." Dkt. 52 at 3 (2d Amd. Compl. ¶ 11). But the key question with respect to this claim is not whether the officers saw that he had been assaulted but, rather, whether Woodruff has alleged facts sufficient to support a plausible inference that the officers knew that he had suffered serious injuries or that he was "bleeding profusely." *Id.* at 4 (2d Amd. Compl. ¶ 14). On this question, his complaint is silent. Plaintiff does not allege that the officers knew that he had gone into shock or that, if not attended to, he might do so. He does not allege that the officers knew that he was "experienc[ing] . . . great pain" or "emotional distress." *Id.* at 5 (2d Amd. Compl. ¶ 20). And, most significantly, he does not allege that the officers observed that he had been stabbed or otherwise injured in the assault.

*Woodruff IV*, 2020 WL 3297233, at *10 (some alterations in original). The Court therefore dismissed Woodruff's delayed medical treatment claim without prejudice. *Id.* at *11.

After the Court issued this decision, the case was set to enter discovery with respect to the two remaining claims. Woodruff's appointed counsel, however, expressed doubts about her ability to handle the discovery process on her own. *See* Minute Entry (Aug. 3, 2020). The Court therefore appointed additional counsel to assist in Woodruff's representation. *See* Minute Order (Aug. 14, 2020). With the assistance of new counsel, Woodruff now moves for leave to amend his complaint once again. Dkt. 72. His proposed Third Amended Complaint seeks to address

5

the flaws that the Court identified in *Woodruff IV* by adding additional factual allegations related to the circumstances surrounding the attack. First, with respect to the failure-to-intervene claim, Woodruff seeks to demonstrate the violation of a non-discretionary duty by alleging that "[a]ll officers also failed to report the assault to the Control Center or to any other officer in a timely manner, as is required by the operative Post Orders" and that, as a result, "no other officer responded to the recreation yard to attend to [Woodruff's] medical needs for a significant amount of time." Dkt. 72-1 at 3 (3d Amd. Compl. ¶ 11). The amended complaint also repleads the delayed medical treatment claim, asserting that "officers would have also seen the assault and the severity of [Woodruff]'s injuries by virtue of their proximity." *Id.*

Defendants opposes the motion to amend on several grounds. Dkt. 73. The motion is now ripe for decision.

## II. ANALYSIS

The Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "But this does not mean that a motion for leave to amend must be granted as a matter of course." *Woodruff III*, 310 F. Supp. 3d at 56 (internal citation and quotation marks omitted). Instead, a Court will consider whether "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment" counsels against granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The United States opposes Woodruff's motion for leave to amend on several grounds. First, it argues that Woodruff's proposed amendments "pertain to a claim—the alleged delay in providing medical treatment—that has been dismissed and thus no longer is part of this lawsuit." Dkt. 73 at 8. The United States acknowledges "that the Court dismissed the delayed medical

treatment claim without prejudice" but insists that Woodruff's "recourse thus would be to file a new lawsuit asserting the delayed medical treatment claim, which would be subject to all available defenses, including the applicable statute of limitations." *Id.* at 10.

This argument fails to grasp the distinction between the dismissal of a *complaint* (or a *claim* within that complaint) without prejudice and the dismissal of an entire *action* without prejudice. *See Ciralsky v. C.I.A.*, 355 F.3d 661, 666 (D.C. Cir. 2004). When an entire action is dismissed without prejudice, that dismissal is without prejudice to refiling a separate lawsuit. *Id.* But when only certain claims within a complaint are dismissed without prejudice, that dismissal is without prejudice to amending the complaint to cure the deficiencies in the pleading of those claims. *Id.* The dismissal of a single claim without prejudice thus does not require the filing of a separate lawsuit to renew the dismissed claim. Rather, as Plaintiffs argue, the delayed medical treatment claim was, "by operation of law, dismissed without prejudice to plaintiffs legitimate attempt to cure the deficiencies the Court had identified" through an amended complaint. *Ghawanmeh v. Islamic Saudi Acad.*, 268 F.R.D. 108, 111 (D.D.C. 2010).

A contrary rule would undermine the interests of judicial economy. That is, requiring the filing of a new lawsuit anytime a single claim is dismissed without prejudice would lead to multiple, duplicative lawsuits about the same controversy, wasting the resources of both the parties and the courts. In the interests of efficiency and justice, this Court has therefore routinely granted leave to amend after dismissing individual *claims* without prejudice. *See, e.g.*, *Fowler v. District of Columbia*, No. CV 18-634, 2020 WL 7014205, at *8 (D.D.C. Nov. 27, 2020); *Lamb v. Millennium Challenge Corp.*, No. 19-cv-589, 2020 WL 6484489, at *13 (D.D.C. Nov. 3, 2020); *Judd v. Serv. Employees Int'l Union, Local 32BJ*, No. 19-cv-2925, 2020 WL 5702088, at *8 (D.D.C. Sept. 23, 2020).

The same reasoning is fatal to the United States' related argument that Woodruff sacrificed his opportunity to amend his complaint because, in the lead up to *Woodruff IV*, he opposed the motion to dismiss on the merits, rather than seeking leave to amend at that juncture. Dkt. 73 at 8–9.  For support, the United States quotes from a footnote in an opinion from Chief Judge Howell for the proposition that "[w]hen a plaintiff elects to oppose a motion to dismiss on the merits, the plaintiff assumes the risk that the court will grant the motion and the plaintiff's claims will be dismissed." *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 136 n.11 (D.D.C. 2013).  Having made that choice, "[a] plaintiff is not entitled simply to have its proverbial cake and eat it too by first opposing a motion to dismiss on the merits (thereby forcing the court to resolve the motion to dismiss), and then, upon losing the motion, amend its complaint to correct the very deficiencies it refused to acknowledge previously." *Id.*  But, crucially, the earlier partial dismissal at issue in that case had not been without prejudice.  *See Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 290–91 (D.D.C. 2012), *aff'd* 969 F.3d 406 (D.C. Cir. 2020).  The footnote is best read, then, as standing for the unremarkable proposition that a plaintiff opposing a motion to dismiss risks that the Court will dismiss a claim *with prejudice*, thus deciding the issue with finality.  And, of course, when a plaintiff could have easily amended her complaint to correct "minor technicalities" of which she had notice, but she instead chooses to put the defendant and the Court to the burden of adjudicating a straightforward motion to dismiss (and the Court then dismisses on the basis of those technicalities), the resulting delay might weigh against later granting leave to amend.  *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 136 n.11; *see also* 6 Charles Alan Wright et al., Federal Practice & Procedure § 1488 (3d ed. 2013).

This, however, is not such a case.  Here, when the Court dismissed the delayed medical treatment claim without prejudice, it did so based on its assessment of all of the circumstances and with the possibility in mind that Woodruff might amend to cure the deficiencies in that claim.  If the Court had understood Woodruff to have forfeited his opportunity to amend by opposing the motion to dismiss or had the Court believed that Woodruff should have moved to amend before opposing the government's motion, then the Court would have dismissed with prejudice, rather than without.  In any event, as the cases cited above demonstrate, the overwhelming consensus in the caselaw is that the dismissal without prejudice of a claim does not preclude a later motion to amend.  *See, e.g.*, *Ciralsky*, 355 F.3d at 666; *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 56–57 (D.D.C. 2019); *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 282 (D.D.C. 2017); *M.K. v. Tenet*, 216 F.R.D. 133, 138 (D.D.C. 2002).

Nor has Woodruff been otherwise dilatory in moving to amend.  To be sure, this is his fourth motion to amend, and it is at least conceivable that he could have made these same amendments before the Court's opinion in *Woodruff IV*, perhaps in response to the arguments in the United States' motion to dismiss.  But it was not until the Court issued its opinion in *Woodruff IV* that Woodruff was given clear notice from the Court of the specific flaws in his pleading that needed to be remedied.  He filed the pending motion to amend roughly four months after the Court issued its opinion in *Woodruff IV* and less than two months after the appointment of new co-counsel.  Especially in light of the rule that leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), the relatively short delay between the issuance of the opinion in *Woodruff IV* and the filing of the motion to amend was not so significant as to merit a denial of the motion.  Regardless, the D.C. Circuit has held that delay alone, without some attendant

prejudice, is generally an insufficient ground to deny a motion for leave to amend. *See In re APA Assessment Fee Litig.*, 766 F.3d 39, 56–57 (D.C. Cir. 2014) ("The district court may not deny such a motion [to amend] based solely on timeliness unless the defendants can show undue prejudice.").

The United States argues that it would be prejudiced by the filing of an amended complaint in two ways. First, it would be forced to file another responsive pleading to the amended complaint. Dkt. 73 at 10. But the filing of an amended complaint will almost always require a defendant to file a new responsive pleading. If the mere need to respond to the amended complaint were sufficient to show prejudice, courts could rarely if ever grant motions for leave to amend. Second, the United States argues that granting leave to amend will delay the case because the United States will likely respond with a motion to stay discovery. *Id.* But discovery is now almost complete, and, in any event, whether the United States moves to stay discovery is entirely within its own control. Because the proposed amendments are so closely related to the two claims that the Court has already permitted to proceed to discovery, moreover, the Court sees no reason that the filing of the Third Amended Complaint would necessarily expand either the scope of discovery or the length of time required to complete it. If the United States needs additional discovery in light of the amendment, however, it can ask for a short extension of the existing schedule.

Finally, the United States argues that the proposed amendment would be futile with respect to Woodruff's attempt to add a claim challenging the failure to report the attack. Dkt. 73 at 11. In *Woodruff IV*, the Court raised the possibility that the prison's regulations may have created a non-discretionary duty to "report [the attack] without delay." *Woodruff IV*, 2020 WL 3297233, at *4. But the United States argues that a failure to report is irrelevant to Woodruff's

injuries because, even if the attack had been reported more promptly, the Court has already held that prison officials did not have any non-discretionary duty to intervene in the attack. Dkt. 73 at 11; *see Woodruff IV*, 2020 WL 3297233, at *4. In an exercise of the Court's discretion, the Court will allow Woodruff to amend, and, in lieu of addressing the United States' arguments regarding this failure-to-report claim on the merits through the framework of futility, the Court will permit the United States to address this additional claim in a motion to dismiss Woodruff's new complaint. This approach has several benefits. First, it will allow the parties to brief the alleged deficiencies in Woodruff's claims more comprehensively. Second, it will avoid the possibility that the Court will need to address the same merits arguments twice, first in the context of the motion to amend the complaint and then later in the context of the motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Woodruff's motion to amend, Dkt. 72, is **GRANTED**. The United States may, however, renew its futility argument in the context of a motion to dismiss the Third Amended Complaint (or, if the government prefers, in a combined motion for judgment on the pleadings and/or for summary judgment, following the close of discovery).

**SO ORDERED**.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: March 10, 2021